**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rafael Key, | No. CV 16-0500-TUC-RCC (LAB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles L. Ryan; et al., | |
| Respondents. | |

Pending before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed on July 28, 2016, by Rafael Key, an inmate confined in the Arizona State Prison Complex in Winslow, Arizona. (Doc. 1)

Pursuant to the Rules of Practice, this matter was referred to Magistrate Judge Bowman for report and recommendation. LRCiv 72.2(a)(2).

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order denying the petition on the merits. Trial counsel was not ineffective for failing to move to suppress an out-of-court identification or failing to impeach an eye witness with a statement he made at the scene of the arrests.

Summary of the Case

Key was found guilty after a jury trial of first degree murder. (Doc. 14, p. 4) The trial court sentenced Key to life in prison with the possibility of parole after 25 years. (Doc. 14, p. 4)

The night of the murder, Key and his brother approached a group of three men, the victim and two others, who were chatting outside the victim's trailer. (Doc. 14, p. 4); (Doc. 15, p. 22) "The five men were under the influence of liquor and[/]or illegal drugs." (Doc. 15, p. 22) The victim's two friends later "gave varying, sometimes confusing accounts of what happened." (Doc. 15, p. 23) One of the friends, Aguirre, testified that Key shot the victim after the victim got into a fight with Key's brother. (Doc. 14, p. 4) The other, Lopez, denied there was any altercation and testified that Key shot the victim after telling him, "I was looking for you." *Id.* Key's brother testified that he was *not* the shooter, but he did not expressly incriminate Key. (Doc. 15, p. 24)

The two brothers fled the scene immediately after the shooting. (Doc. 15, p. 22) Later that same night, police located and arrested the brothers in another part of the trailer park. *Id.* Aguirre saw Key's brother being arrested and said in Spanish to the arresting officer either "you got *him*" or "you got *them*." (Doc. 15, p. 23) After the arrests, Aguirre was interviewed by the police in Spanish. *Id.* According to the English transcription, he recalled saying "you got *him*." *Id.*

Both brothers had the victim's DNA on their clothing. (Doc. 15, p. 22) Key argued at trial that his brother was the real shooter and the witnesses were mistaken or lying. (Doc. 15, p. 14)

After the verdict and sentencing, Key filed an appeal arguing there was insufficient evidence of premeditation and the killing was in the "heat of passion." (Doc. 14, pp. 3-7) The Arizona Court of Appeals affirmed Key's conviction on November 30, 2011. *Id.* The Arizona Supreme Court summarily denied Key's petition for review on September 6, 2012. (Doc. 14-5, p. 2)

Previously, on January 13, 2012, Key filed notice of post-conviction relief. (Doc. 14-6, p. 2) Key filed his petition on June 24, 2013. (Doc. 14-7, p. 2) Key argued trial counsel was ineffective because he "should have filed a motion to suppress identification pursuant to *State v. Strickland*" and he should have impeached Aguirre with the statement he made at the scene of the arrests. (Doc. 14-7, pp. 12-17)

The trial court held an evidentiary hearing on June 3, 2014. (Doc. 14-10, p. 2) Trial counsel testified that he did not file a motion to suppress Aguirre's out-of-court identification at the preliminary hearing "because he had never had such a motion granted." (Doc. 15, p. 26) He could not offer an explanation for why he did not try to impeach Aguirre with the statement he made at the scene of the arrests. (Doc. 15, p. 27) On August 15, 2014, the trial court denied the petition for post-conviction relief. (Doc. 15, pp. 22-29)

Key filed a petition for review raising the same two issues. (Doc. 15-4, p. 5) The Arizona Court of Appeals granted review but denied relief on January 16, 2015, adopting the reasoning of the trial court. (Doc. 15-5, pp. 2-4) The Arizona Supreme Court denied his petition for review on September 22, 2015. (Doc. 15-5, p. 5)

On July 28, 2016, Key filed the pending petition for writ of habeas corpus. (Doc. 1) He claims counsel was ineffective for (1) failing to suppress Aguirre's identification of him at the preliminary hearing and (2) failing to impeach Aguirre with the statement he made when he saw Key's brother being arrested. (Doc. 1)

In their answer, the respondents argue Key's petition should be denied on the merits. (Doc. 13)

Standard of Review

The writ of habeas corpus affords relief to persons in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). If the petitioner is in custody pursuant to the judgment of a state court, the writ will not be granted unless prior adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The petitioner must shoulder an additional burden if the state court considered the issues and made findings of fact.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C.A. § 2254 (e)(1).

"[The] standard is intentionally difficult to meet." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015). "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of th[e] [Supreme] Court's decisions." *Id.*

A decision is "contrary to" Supreme Court precedent if that Court already confronted "the specific question presented in this case" and reached a different result. *Woods*, 135 S.Ct. at 1377. A decision is an "unreasonable application of" Supreme Court precedent if it is "objectively unreasonable, not merely wrong; even clear error will not suffice." *Id*. at 1376. "To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (punctuation modified)

If the highest state court fails to explain its decision, this court looks to the last reasoned state court decision. *See Brown v. Palmateer*, 379 F.3d 1089, 1092 (9th Cir. 2004).

Federal habeas review is limited to those issues that have been fully presented to the state court. This so-called "exhaustion rule" reads in pertinent part as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State. . . .

28 U.S.C. § 2254(b)(1)(A).

To be properly exhausted, the federal claim must be "fairly presented" to the state courts. *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008). "Fair presentation requires that the petitioner describe in the state proceedings both the operative facts and the federal legal theory on which his claim is based so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Id.* (punctuation modified)

The petitioner must explicitly alert the state court that he is raising a *federal* constitutional claim. The petitioner must make the federal basis of the claim explicit either by citing specific provisions of federal law or federal case law, even if the federal basis of a claim is "self-evident," *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), *cert. denied*, 528 U.S. 1087 (2000), or by citing state cases that explicitly analyze the same federal constitutional claim, *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

If the petitioner is in custody pursuant to a judgment imposed by the State of Arizona, he must present his claims to the state appellate court for review. *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005), *cert. denied*, 546 U.S. 818 (2005); *Swoopes v. Sublett*, 196 F.3d 1008 (9th Cir. 1999), *cert. denied*, 529 U.S. 1124 (2000). If state remedies have not been exhausted, the petition may not be granted and ordinarily should be dismissed. *See Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991). In the alternative, the court has the authority to deny on the merits rather than dismiss for failure to exhaust. 28 U.S.C. § 2254(b)(2).

A claim will be denied as "procedurally defaulted" if the state court declined to address the issue on the merits for procedural reasons. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). Procedural default also occurs if the claim was not presented to the state courts, and it is clear the state would now refuse to address the merits of the claim for procedural reasons. *Id.*

Procedural default may be excused if the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998). A fundamental miscarriage of justice results "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649 (1986).

Discussion

In Claim (1), Key argues counsel was ineffective for failing to move to suppress Aguirre's identification of him at the preliminary hearing. (Doc. 1, p. 6) The respondents concede the claim is exhausted, but they argue it should be denied on the merits. (Doc. 13)

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-686 (1984). Habeas relief, however, is available only if "counsel's performance was deficient" and the "deficient performance prejudiced the defense." *Id.* at 687.

"To show prejudice under *Strickland* from failure to file a motion, [the petitioner] must show that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him." *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999).

Because hindsight is 20/20, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. State court review of counsel's performance must be deferential. Federal court review on habeas is "doubly deferential." *Cullen v. Pinholster*, 563 U.S. at 190.

In general, evidence will be suppressed if its introduction would violate due process. Evidence of an out-of-court identification may be suppressed if the identification procedure created "a very substantial likelihood of irreparable misidentification." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Id*.

If the pre-trial identification procedure was unnecessarily suggestive, the court proceeds to determine whether the ultimate identification was nevertheless sufficiently reliable. *Id.* at 198-99. If so, then the identification is permissible regardless of the errors that occurred in the pre-trial procedure. *Id*.

"[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty

demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id*. at 199-200.

In this case, Key argues counsel was ineffective because he should have filed a motion to suppress Aguirre's identification of him at the preliminary hearing. (Doc. 1, p. 6) He believes the identification should have been suppressed because Aguirre saw him in the news prior to the hearing and saw him wearing prison garb when he made his identification. *Id*. He notes that Aguirre stated in his first police interview that he could not identify the shooter because it was so dark. *Id*.

The trial court denied this claim on the merits. (Doc. 15, pp. 26-27) The court found, based on testimony given at the evidentiary hearing, that trial counsel decided not to file a motion to suppress Aguirre's out-of-court identification because he never had such a motion granted. *Id*. The court found that counsel's decision did not violate the "prevailing norms." (Doc. 15, p. 27) Accordingly, trial counsel's performance was not deficient.

In addition, the trial court found that suppression of the out-of-court identification would not have changed the ultimate verdict. It is unlikely that the jury found *any* of Aguirre's testimony particularly persuasive. (Doc. 15, p. 28) The murder scene was very dark, and Aguirre was intoxicated. *Id*. Aguirre's various statements about the murder were inconsistent with each other and inconsistent with those offered the other eyewitnesses. *Id*. The trial court specifically instructed the jury to consider all these factors when evaluating the testimony of an eyewitness. Accordingly, it is unlikely that the jury considered the out-of-court identification to be particularly probative. As the trial court explained, "[t]he suggestibility factors of a preliminary hearing identification do not require a motion to suppress and are and were addressed by a cautionary instruction to the jury." (Doc. 15, p. 27)

Moreover, the out-of-court identification was only one small part of the evidence presented at trial. It could not have had much of an effect on the jury's ultimate verdict. Key was identified as the shooter by the victim's other friend, Lopez. (Doc. 15, p. 24) DNA evidence placed Key at the scene. *Id*. "The jury saw and judged the story and the demeanor of the brother, the only other possible suspect, when he denied being the shooter." (Doc. 15,

- 7 -

p. 28) Ample evidence of guilt was introduced aside from the out-of-court identification. Its suppression would not have resulted in a different outcome. *See* (Doc. 15, p. 27) ("[I]n this case the [d]efendant is arguing the additional impact of a missing line of questioning on misidentification with a single witness.").

The trial court found that trial counsel's performance was not deficient. The trial court further found that had the evidence been suppressed, it is unlikely that the verdict would have been different. The trial court did not explicitly state that it would have denied the motion had it been made, but this court concludes as much based on the trial court's dismissive attitude toward this type of motion. *See* (Doc. 15, p. 27) ("The suggestibility factors of a preliminary hearing identification do not require a motion to suppress and are and were addressed by a cautionary instruction to the jury."). Trial counsel was not ineffective.

The Arizona Court of Appeals likewise held that counsel was not ineffective adopting the trial court's reasoning. (Doc. 15-5, pp. 2-4) That decision denying relief was not "contrary to" or "an unreasonable application of" federal law. *See* 28 U.S.C. § 2254(d).

In Claim (2), Key argues counsel was ineffective for failing to impeach Aguirre with the statement he made when he saw Key's brother being arrested. (Doc. 1) The respondents concede the claim is exhausted, but they argue it should be denied on the merits.

The trial court found, based on the testimony given at the evidentiary hearing, that trial counsel's failure to pursue this line of questioning was not a reasoned tactical decision. Accordingly, the trial court found that counsel's performance was deficient.

Nevertheless, the trial court found that trial counsel's error did not result in prejudice. Counsel could have introduced evidence that Aguirre said, "You got him!" when he saw the *brother* being arrested. That statement appears in the English transcript of Aguirre's interview with Detective Garcia, which took place after the arrests. (Doc. 15, p. 25) But if this evidence had been introduced, the state would have introduced Garcia's testimony that he "did not review the English transcript of his interview in Spanish with Mr. Aguirre for errors when it was produced nor was that his responsibility." *Id.* The state also would have introduced the testimony of Sergeant Navarro, who heard Aguirre say at the arrest scene, "You guys have the

right people." (Doc. 15, p. 25) Navarro specifically remembered that Aguirre had used the plural form. *Id*.

Aguirre's statement as it appears in the English transcript would not have been particularly probative because the state would have introduced evidence casting doubt on what Aguirre actually said. Moreover, as the court noted above, the evidence against Key was considerable. The introduction of one more inconsistency in the testimony of one of the three eyewitnesses would not have changed the outcome of the trial. (Doc. 15, p. 28)

The Arizona Court of Appeals likewise held that counsel was not ineffective adopting the trial court's reasoning. (Doc. 15-5, pp. 2-4) That decision denying relief was not "contrary to" or "an unreasonable application of" federal law. *See* 28 U.S.C. § 2254(d).

RECOMMENDATION

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order DENYING the petition for writ of habeas corpus. (Doc. 1)

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 14 days of being served with a copy of this report and recommendation. If objections are not timely filed, they may be deemed waived. A Response to an objection is permitted, but a Reply to a Response is not permitted without permission from the District Court.

DATED this 11th day of January, 2017.

Leslie A. Bowman
United States Magistrate Judge